**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KIEL BRENDAN BRANDT, | : | Civil No. 3:26-cv-906 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| WARDEN JESSICA SAGE, | : | |
| Respondent | : | |

**MEMORANDUM**

Petitioner Kiel Brendan Brandt ("Brandt"), an inmate confined at the Federal

Correctional Institution, Lewisburg, Satellite Camp, initiated the above-captioned action by

filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Brandt

alleges that officials at the Lewisburg Satellite Camp did not provide him with a proper

review for prerelease placement under the Second Chance Act. (*Id.*).

For the reasons that follow, the Court will dismiss the habeas petition.

I.    **Background**

A.    *Brandt's Criminal* History

Brandt is serving a 27-month term of imprisonment imposed by the United States

District Court for the Eastern District of Virginia for his conviction of wire fraud. (Doc. 7-2,

Declaration of BOP Unit Manager Chase Emerson ("Emerson Decl."), at 1 ¶ 3; Doc. 7-3,

Public Information Inmate Data). According to BOP documentation submitted by

Respondent, Brandt's projected release date, via First Step Act release, is January 17,

2027. (*Id.*).  However, a review of the BOP's inmate locator indicates that Brandt's projected release date is now January 2, 2027.[1]

B.    Administrative Remedy History

The Administrative Remedy Generalized Retrieval reveals that, while in BOP custody, Brandt filed the following three administrative remedies.  (Doc. 7-2, Emerson Decl. at 2 ¶ 5; Doc. 7-4, Administrative Remedy Generalized Retrieval).

On August 28, 2025, Brandt filed administrative remedy 1252532-F1 with the institution, requesting a review of his residential reentry center ("RRC") placement time. (Doc. 7-4, at 2).  The institution denied the remedy on September 23, 2025.  (*Id.*).  Brandt appealed to the Regional Director, and, on December 8, 2025, the Regional Director denied his appeal.  (*Id.*).  Brandt did not appeal to the Central Office.  (*See* Doc. 7-4).

On February 23, 2026, Brandt filed administrative remedy 1269193-F1 with the institution, requesting legal mail logs.  (Doc. 7-4, at 3).  The institution denied the remedy on March 13, 2026.  (*Id.*).  Brandt did not appeal to the Regional or Central Offices.  (*See* Doc. 7-4).

C.    Facts Related to the Second Chance Act

Brandt's Unit Team conducted an Individualized Needs Plan-Program Review.  (Doc. 7-2, Emerson Decl. at 2 ¶¶ 6-7; Doc. 7-5, Institutional Referral for Community Corrections

---

[1]    *See* FEDERAL BUREAU OF PRISONS' INMATE LOCATOR, https://www.bop.gov/inmateloc/ (searching Inmate Number 52132-511) (last visited May 20, 2026).

Center ("CCC") Placement).  The Unit Team reviewed Brandt for prerelease placement under the five factors of the Second Chance Act of 2007, codified at 18 U.S.C. §§ 3621 and 3624.[2] (*Id.*).  The Unit Team considered and evaluated the five factors as follows: (1) there are available RRCs in Brandt's release area; (2) there are no extenuating circumstances that would preclude placement; (3) Brandt has an established residence and community ties; (4) the sentencing court's Judgment and Commitment Order does not contain any statements regarding RRC placement; and (5) there are no pertinent policies from the United States Sentencing Commission.  (Doc. 7-5, at 2; *see also* 18 U.S.C. 3621(b)).  As a result of the review, the Unit Team recommended a placement date of August 30, 2026. (Doc. 7-5, at 2).  Brandt is currently scheduled to transfer to home confinement on September 8, 2026.  (Doc. 7-2, Emerson Decl. at 2 ¶ 7; Doc. 7-6, Inmate History Destination).

D.    Claims Raised in the Habeas Petition

In his Section 2241 petition, Brandt alleges that the BOP did not provide him with a proper review for prerelease placement and failed to award him enough prerelease

---

[2]    The Second Chance Act states in pertinent part as follows:

The [BOP] shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.

*See* 18 U.S.C. § 3624(c).

3

placement time under the Second Chance Act. (Doc. 1). Respondent contends that the Section 2241 petition must be dismissed because Brandt failed to exhaust his administrative remedies and the Court lacks subject matter jurisdiction. (Doc. 7). Alternatively, Respondent argues that the petition must be denied because Brandt has no right to prerelease placement, no right to credits under the Second Chance Act, and Brandt has been properly reviewed under the five factors of the Second Chance Act and will be transferred to home confinement. (*Id.*). The Court concludes that Brandt has not exhausted his administrative remedies and that the Court lacks jurisdiction to hear Brandt's claims. Therefore, the Court does not reach Respondent's alternative arguments.

## II.    **Discussion**

### A.    Exhaustion of Administrative Review

While there is no statutory exhaustion requirement for habeas corpus petitions brought pursuant to Section 2241, the Third Circuit has recognized that "[f]ederal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to [Section] 2241." *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citations omitted); *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required because: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the

4

opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (citations omitted); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981).

However, exhaustion of administrative remedies is not required where these underlying reasons for exhaustion would not be served. *See Coleman v. U.S. Parole Comm'n*, 644 F. App'x 159, 162 (3d Cir. 2016) (unpublished). For example, exhaustion is unnecessary if the issue presented is one that involves only statutory construction. *See Vasquez v. Strada*, 684 F.3d 431, 433-34 (3d Cir. 2012) (citing *Bradshaw*, 682 F.2d at 1052). Exhaustion is also excused when it would be futile. *See Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982); *see also Brown v. Warden Canaan USP*, 763 F. App'x 296, 297 (3d Cir. 2019). "In order to invoke the futility exception to exhaustion, a party must 'provide a clear and positive showing' of futility before the District Court." *Wilson v. MVM, Inc.*, 475 F.3d 166, 175 (3d Cir. 2007) (quoting *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002)).

To exhaust administrative remedies, a federal inmate must comply with the procedural requirements of the BOP's administrative remedy process, which are set forth in the Code of Federal Regulations. *See generally* 28 C.F.R. §§ 542.10-542.19. Under these regulations, an inmate shall first attempt informal resolution of his complaint with staff and, if the inmate is unable to resolve his complaint informally, he shall submit a formal, written request on the proper form to the designated staff member. *See id.* §§ 542.13-542.14. If the inmate is not satisfied with the Warden's response, the inmate shall then submit an

5

appeal to the Regional Director, using the appropriate form. *See id.* § 542.15(a). And, finally, if the inmate is not satisfied with the Regional Director's response, then the inmate shall submit an appeal to the Office of the General Counsel, located in the BOP Central Office, using the appropriate form. *See id.* An inmate is not deemed to have exhausted his administrative remedies until his complaint has been pursued at all levels. *See id.* (explaining that an "[a]ppeal to the General Counsel is the final administrative appeal").

Here, the record reflects that, although Brandt filed an administrative remedy concerning RRC placement—number 1252532—he undisputably failed to properly exhaust that remedy. (Doc. 7-4, at 2). Brandt filed administrative remedy 1252532-F1 at the institution level. (*Id.*). Upon review, the institution denied the remedy. (*Id.*). Brandt appealed to the Regional Director, and, on December 8, 2025, the Regional Director denied his appeal. (*Id.*). The record confirms that Brandt did not appeal to the Central Office—the necessary step to fully exhaust his administrative remedy. (*Id.*). Rather than comply with the Administrative Remedy process, Brandt bypassed the statutorily mandated procedures and, instead, filed the instant habeas petition in federal court.

Brandt mistakenly claims that he fully exhausted his administrative remedies. (Doc. 1, at 6-7). He avers that "[h]is BP-8 and BP-9 were denied with boilerplate responses; his BP-10 was acknowledged, extended, and ultimately denied (delivered to Petitioner) on February 24, 2026" and his "BP-11 was submitted and received." (*Id.*). However, Brandt has not presented any evidence that the Central Office received his appeal of administrative

remedy 1252532. Brandt has submitted a United States Postal Service certified mail tracking number of a mailing which purportedly contained his BP-11. (Doc. 1-19). However, this documentation only shows that Brandy mailed an unidentified item to Washington, DC. (*Id.*). There is no evidence showing what Brandt mailed in this package. More importantly, there is no evidence that the Central Office received and logged his BP-11. Instead, the official BOP documentation confirms that the Central Office never received, processed, or logged a BP-11 from Brandt. (*See* Doc. 7-4).

As stated, if the Regional Director denies a grievance appeal and the inmate remains dissatisfied, the inmate must lodge a final appeal to the BOP's Central Office within 20 days of the denial. 28 C.F.R. § 542.15(a). Only if the grievance is denied by the Central Office has exhaustion been completed and the inmate may then file a civil action. 28 C.F.R. §§ 542.10, 542.15. Brandt's argument that he fully exhausted administrative remedy 1252532 based on his belief that the Central Office received his BP-11 is unavailing. Pursuant to 28 C.F.R. § 542.18, "a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received." The "statutory or regulatory scheme[ ]" applicable to BOP administrative appeals "clearly require[s] actual receipt by a specific date." *Longenette v. Krusing*, 322 F.3d 758, 764 (3d Cir. 2003). Brandt failed to submit any competent evidence that the Central Office actually received his final appeal or that he received a final decision from the Central Office.

7

Brandt has not identified any BOP actions that would clearly and unambiguously violate statutory or constitutional rights, and he has not set forth any facts or advanced any argument that would permit this Court to find that exhaustion of administrative remedies would subject him to irreparable injury. (*See* Doc. 1). Additionally, the fact that Brandt's sentence currently falls within the 12-month period that the BOP could place him in pretrial release is not a basis to excuse exhaustion.[3]

The Court finds that Brandt's claim must first be presented to BOP officials and fully exhausted. Because Brandt failed to fully and properly exhaust his administrative remedies before petitioning this Court, and because no exception to the exhaustion requirement applies here, his Section 2241 petition must be dismissed. *See, e.g., Vasquez*, 684 F.3d at 434 (district court properly dismissed federal prisoner's Section 2241 petition because he failed to exhaust his administrative remedies)

## B.    Brandt's Claim is Not Cognizable under Section 2241

Assuming that administrative exhaustion could be excused, Brandt's claim is not cognizable under Section 2241. Brandt is challenging the BOP's alleged failure to provide him with a proper review for prerelease placement and the failure to award him enough prerelease placement time. (Doc. 1). His challenge essentially involves a request for

---

[3]    The Court notes that the Second Chance Act does not entitle a federal inmate to any guaranteed placement in prerelease custody. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 244-51 (3d Cir. 2005) (holding, in exercising its discretion to make halfway house placement decisions, the BOP must consider the factors set forth in § 3621(b); "[h]owever, that the BOP may assign a prisoner to a CCC does not mean that it must").

earlier transfer to prerelease custody.  However, this Section 2241 challenge, which implicates the execution of his sentence (i.e., where the remainder of his sentence is served), is not cognizable on habeas review.

The core of habeas corpus usually involves a challenge to the fact or duration of confinement.  *See Preiser v. Rodriguez*, 411 U.S. 475, 487-88, 500 (1973).  In *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit held that—in addition to the fact or duration of confinement—prisoners may also challenge the "execution" of their sentences in a petition under 28 U.S.C. § 2241.  *See Woodall*, 432 F.3d at 241-44.  The *Woodall* Court acknowledged that "the precise meaning of 'execution of the sentence' is hazy." *Id.* at 242.

In *Cardona v. Bledsoe*, 681 F.3d 533 (3d Cir. 2012), the Third Circuit Court of Appeals clarified the jurisdictional boundaries for execution-of-sentence habeas challenges. In *Cardona*, the Third Circuit considered whether a claim challenging the BOP's decision to transfer the petitioner to the Special Management Unit—a highly restrictive form of confinement—was cognizable in a Section 2241 habeas petition as a claim challenging the execution of the petitioner's sentence.  *Cardona*, 681 F.3d at 535-37.  The court summarized two earlier Third Circuit cases that analyzed what claims could be brought to challenge the execution of a sentence under Section 2241—*Woodall* and *McGee v. Martinez*, 627 F.3d 933 (3d Cir. 2010).  The court reasoned that the claims at issue in *Woodall* and *McGee* were cognizable because they "both challenged BOP conduct that

conflicted with express statements in the applicable sentencing judgment." *Cardona*, 681 F.3d at 536. "That is, both petitions claimed that the BOP was not properly 'put[ting] into effect or carry[ing] out' the directives of the sentencing judgment." *Id.* (quoting *Woodall*, 432 F.3d at 243). The court in *Cardona* thus held, "[i]n order to challenge the execution of [a] sentence under § 2241, [a petitioner] would need to allege that BOP's conduct was somehow inconsistent with a command or recommendation in the sentencing judgment." *Id.* at 537. Because the petitioner's claim did not argue that such an inconsistency was present, the court found that he was not properly challenging the "execution" of his sentence and held that it was not a cognizable Section 2241 habeas claim. *Id.* at 537, 538.

Similarly, Brandt has not alleged that the BOP's conduct regarding prerelease custody is inconsistent with an express command or recommendation in his judgment of sentence. Brandt's sentencing judgment does not address or discuss prerelease custody. *See United States v. Brandt*, No. 1:24-cr-250-1 (E.D. Va.), Doc. 27. Accordingly, Brandt's habeas petition does not properly challenge the "execution" of his sentence and this court lacks jurisdiction over his claim. *See Cardona*, 681 F.3d at 537, 538. As such, the Section 2241 petition must be dismissed.

## III.    Conclusion

For the foregoing reasons, the Court will dismiss the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  (Doc. 1).  A separate Order shall issue.


Robert D. Mariani
United States District Judge

Dated: May ___, 2026